# SUPREME COURT.

## GOODRICH agt. VANDERBILT AND DREW.

The place of trial of a transitory action should be in the county where the principal transactions between the parties occurred, unless the preponderance of witnesses is so great as to warrant the court to retain the place of trial in another county.

*It seems,* that the objection to changing the place of trial to the city and county of New York, on account of the pressure of business in that city and apprehensive delays in the trial, may be obviated by granting an election to the parties to substitute an adjoining county, Kings, Richmond, Westchester or Rockland.

*Washington Special Term, September* 1852. Motion in this and seven other causes, to change the place of trial in five from the county of St. Lawrence, and in the remaining three from the county of Franklin, to the city and county of *New York.*

This is an application on the part of the defendants, who are residents of the city and county of New York, to change the place of trial from the county of St. Lawrence to that city and county. The affidavit of Cornelius Vanderbilt, one of the defendants, states that the action is brought to recover damages of the defendants, which the plaintiff alleges he has sustained, by reason of his not having been conveyed from the city of New York to San Francisco, California, by a line of transportation, known by the name of Vanderbilt's line for California, via Nicaragua, and in pursuance of an alleged contract for such conveyance, which the plaintiff claims was made by the defendants; and also to recover damages for expenses, detention and injuries alleged by the plaintiff to have been sustained by him on the way from San Juan del Norte to San Juan del Sur, and other expenses incurred by plaintiff on his return from San Juan del Sur to the city of New York. The defences are, that defendants are not the owners of said lines, or liable for said damages; that all the damages claimed have not been sustained; that the plaintiff did not make the contract for his transportation from New York to San Francisco, in the manner alleged in the complaint; that at the time of the purchase of his tickets, there was a com-

pany for the transportation of passengers from San Juan del Norte to San Juan del Sur, by the Nicaragua transit route, called the Accessory Transit Company of Nicaragua. That said transit route did not belong to defendants, and that plaintiff did not purchase his ticket for transportation over that route of defendants, but of said Accessory Transit Co, or their agent. That at the same time, the steam ship North America belonged to the defendants jointly, and plaintiff purchased his ticket from defendants for his transportation from San Juan del Sur to San Francisco, in the said North America, and also purchased a ticket for his transportation from New York to San Juan del Norte. That the plaintiff was transported from New York to San Juan del Sur, but was not transported from San Juan del Sur to San Francisco, by reason of the accidental and unavoidable loss by the perils of the sea, of the said steam ship North America, which loss was unknown at the time of the sale of the tickets to plaintiff. That after the loss was discovered, the plaintiff parted with his ticket for his passage by the North America, in consideration of receiving a passage from San Juan del Norte to New York, on board the steam ship *Daniel Webster*, owned by the deponent. That the sale of the tickets to plaintiff was made in the city of New York, and that the places of business of defendants and the Accessory Transit Co. are, and were at the time of the sale of said tickets, in the said city. The deponent then swears to the names of *twenty-three witnesses*, each and every one of whom are material and necessary witnesses, as he is advised by his counsel and believes, for the defence; all of which said witnesses reside in the city of New York, *except* Daniel B. Allen and Jacob H. Vanderbilt, who reside in the county of Richmond, but transact their business in New York; and except Henry Churchill and Reuben Lord, who are the master and purser of the steam ship Prometheus, sailing between San Juan del Norte and New York, being the ship in which plaintiff was transported to San Juan del Norte. That one of the witnesses named is the agent of the several owners of the line known as Vanderbilt's line, and sold the tickets to the plaintiff for his passage, and is a material witness to prove the circumstances attending such sale, and for whom he acted in the sale; that five others

of the witnesses named are clerks in the office of transportation, and are material to prove the manner in which the business of the line is conducted, and the *circumstances* attending the voyage in question. That three others of the witnesses named, are *one secretary*, and another *treasurer* of the Accessory Transit Co., and the third was the general agent of said company at Nicaragua, and had charge of the transportation of the passengers across the isthmus, and are material to prove the sale of the tickets by the company, the ownership of the said transit route, and the mode in which its business was conducted, and the circumstances attending the plaintiff's passage. That two others of the witnesses named, were part owners of the line of steamers running on the Pacific ocean in said line of transportation, and are material to show how the line was formed. That of two others, one was *purser* and one *master* of the steam ship Prometheus, when plaintiff sailed from New York on board thereof, and are material to show how said plaintiff was received on board said Prometheus, his transportation to San Juan del Norte, and the delivery to plaintiff of his ticket by the transit route. That one other witness was the manager of the steam boats on the river San Juan, when plaintiff went from San Juan del Norte to San Juan del Sur, and is material to show the circumstances attending his passage to San Juan del Sur; that another was on the isthmus of Nicaragua at the time of plaintiff's arrival, and is material to prove the occurrences there; that three others were employed on board the steamers of the transit company at the time plaintiff went to San Juan del Sur, and are material to testify as to the detention and injuries sustained by the passengers on said route. That of two others, one was *master* and the other *engineer* of the steam ship North America at the time of her loss, and are material to prove the facts relative to such loss. That another was purser of the Daniel Webster, when plaintiff returned to New York on board said ship, and is material to prove the circumstances attending that return; and that the last (Jacob H. Vanderbilt), was on the isthmus when the passengers of the North America arrived there, and made arrangements for their return, and is a material witness to prove the occurrences on the isthmus.

Goodrich agt. Vanderbilt and Drew.

The plaintiff in his affidavit, by which he seeks to resist the application, states that his residence is in Massina in the county, of St. Lawrence, where it has been for several years; that the business between him and the transportation company (deft's), was transacted between him and Daniel P. Allen and James Rentoul, two of the witnesses named in defendants' affidavit, alone; and that the other four persons named as clerks, were not present at the sale of the tickets, or only two of them, and they were so remote as not to be able to know, or to have heard any thing of the transaction. That at the time he received tickets from Allen, *one* for a passage from New York to San Juan del Norte by the Prometheus, one for a passage from San Juan del Norte to San Juan del Sur, and one for a passage from San Juan del Sur to San Francisco by the North America; and received no other tickets from any other person, *except* that while on board the Prometheus, the ticket for a passage from San Juan del Norte to San Juan del Sur, was taken up and another given in exchange. That three others of the witnesses, the secretary, treasurer and agent of the transit line, were neither of them present when he received his tickets, and can personally know nothing of the transaction. That Reuben Lord was not *purser* of the Prometheus at the time stated by defendant in his affidavit, but that another witness named by defendant (Hopkins) was such purser. That Banker, another witness named by defendants as manager of the steam boats, was at San Juan del Norte when plaintiff arrived there, but did not go across to San Juan del Sur, and can personally know nothing of the circumstances attending the passage from San Juan del Norte to San Juan del Sur. That he does not know and never saw, to his knowledge, *Skinner*, another witness, nor did he know any thing of Jacob H. Vanderbilt, until he saw him on board the Daniel Webster, on his return to New York. That he has fully stated to his counsel the facts which, according to his information and belief, defendant can prove by fifteen of the witnesses named in Vanderbilt's affidavit, and his counsel has advised him, and he believes that neither of said fifteen witnesses can be material or are necessary for the defend- ants on the trial. That he has stated to his counsel the facts he expects to be able to prove on said trial, by each of twenty-eight

witnesses, whose names he sets forth, and that each and every of them are material and necessary, and he can not safely proceed to the trial without the testimony of each and every of them, as he is advised by his said counsel and believes. That ten of the witnesses reside in Massina, forty miles from the court house in St. Lawrence county, two at Ogdensburgh, three in Madrid, five in Norfolk, three in Louisville, all in St. Lawrence county, two in Malone, and one in Bangor in the county of Franklin, and one in Canada West, varying from twenty to sixty miles from the court house, and all about 400 miles from New York. That seven of the witnesses were with him at the office in the city of New York when he made his contract and purchased his tickets from Allen and Rentoul, and all heard and remembered what was said at the time; that they all took passage with him and were with him during the whole of his passage to San Juan del Sur, and remained with him during his stay, and returned with him to New York, and are fully acquainted with all the facts connected with the whole matter. That eleven others of the witnesses named have all been in California by way of the isthmus of Nicaragua, and are all acquainted with the climate and unhealthy exposures to which persons detained on the isthmus are subjected, and are also acquainted with the state of business and rates of wages in California, and the value of the plaintiff's time there: that three of them went out to California last spring about the time plaintiff started to go there, and returned a few months since. That another witness (———) returned from California about two months ago, and two others (both the Willsons) returned later by the said Nicaragua route. That another (Jackman) was on the isthmus of Nicaragua when plaintiff was there and knew his condition and exposure while there. That the remaining eight have for several years resided near neighbors of plaintiff, and are intimately acquainted with the circumstances attending his leaving for California, and with his condition when he returned, and knew the value of his time, and are each of them material to prove these facts.

FLANDERS, WHEELER and TAYLOR, *for Plaintiff*.

HORACE F. CLARK, *for Defendants*.

C. L. ALLEN, Justice.—The 45th rule of this court provides, that " in addition to what has usually been stated in affidavits concerning venue, either party may state the nature of the controversy and show how his witnesses are material, and may also show where the cause of action or the defence, or both of them arose; and these facts will be taken into consideration by the court in fixing the place of trial." It is in reference to this rule that both parties have endeavored to shape their affidavits in support and resistance of this motion. I have carefully looked into these affidavits, and also into the pleadings, copies of which have been submitted by the parties, and I am unhesitatingly drawn to the conclusion that the place of trial should be changed. It is perfectly clear that the contract upon which this action is founded, and all the transactions relating to it, occurred in the city of New York, at the office of the transportation line of the defendants, called the Vanderbilt line. About this there is no dispute. The plaintiff alleges it in his complaint and it is admitted and claimed to be so by the defendants. The circumstances occurring after the purchase of the tickets, and which form the subject matter of the action, all happened in that city, and on the voyage and transportation from there to San Juan del Norte to San Juan del Sur and back to New York, on board the ships of defendants or those of the Accessory Transit Co. and during the transportation of plaintiff from San Juan del Norte to San Juan del Sur. It has been repeatedly decided that the place of trial of a transitory action should be in the county where the principal transactions between the parties occurred, unless the preponderance of witnesses is so great, as to warrant the court to retain the place of trial in another county. It manifestly appears that many facts and circumstances, which transpired in New York and on the voyages, must be given in evidence on the trial. Indeed most of the facts to be established happened at a great distance from St. Lawrence county, and I can perceive no testimony very material to show by witnesses exclusively from that county except the allegation in the complaint, of the condition of the plaintiff when he started for California, and his circumstances at that time.

The plaintiff has shown by his affidavit that he has five more

Goodrich agt. Vanderbilt and Drew.

witnesses than the defendants, who reside in the county of St. Lawrence and its vicinity. It must be remembered, however, that he does not state that he will be unable to prove the facts, or any of them, which he expects to establish by their testimony, by any other witnesses residing in New York or its vicinity. It is more than probable that he can establish most of them more fully, particularly as to the unhealthiness of the climate on the isthmus, and the rate of wages in California, by witnesses residing there, than by those residing in the county of St. Lawrence. Nor can I discover that he will need all or nearly all of the witnesses whom he names, to prove each of the particular facts to *which he claims* they will testify. For instance, the seven first witnesses were all present, as he states, in the office when the contract was made, and each of them distinctly recollects all that was said on that occasion. That only two other persons besides himself were present, and these were Allen and Rentoul, the two clerks of defendants. Can it be urged that he will need all those seven witnesses to prove that contract? Or will not any *one, or two* of them at farthest, be sufficient for that purpose? If it be said the defendants have sworn that five or six other persons were present and witnessed the transaction, and that they will be sworn as witnesses for defendants and that plaintiff will consequently need the whole seven on his part, then he is incorrect in stating that but two others were present, and if they were all present, then their number balances the plaintiffs number on that point. It is to be remarked too, here, that these seven witnesses are each of them plaintiffs in an action against these same defendants, growing out of the same transaction, which actions are all at issue, and in all of which motions are made to change the place of trial, and in which these seven witnesses are named as material in every action except the one in which they are plaintiffs; and it is said that they are necessary to prove all the other facts on which the plaintiff relies for a recovery, as they accompanied him throughout the whole adventure until his return, to New York. Be it so; will they all be needed to prove the same facts, many of which can be established by other witnesses, residing in New York or its vicinity, and others of which are not disputed by the pleadings?

*Again :* the eleven witnesses severally named by plaintiff are represented as being acquainted with the climate and unhealthy exposure to which persons detained on the isthmus of Nicaragua are exposed, and the state of businsss and rate of wages in California. How is it probable that these eleven witnesses will all be needed to prove those facts? In the first place, I do not understand it to be pretended by the answer, that the climate on the isthmus of Nicaragua is not as detailed in the plaintiff's affidavit, and that persons detained there are not subjected to exposure by such detention; that if it were denied, the seven witnesses first named who were with plaintiff at the time, are most competent to prove the dangers to which he was exposed, and any witnesses of either plaintiff or defendant, could not fail to establish a fact, about which there seems to be no dispute. So any two witnesses could prove the state of business and rate of wages at California, at the time plaintiff sought to go there, if it should be deemed proper and material to prove that fact on the trial. It appears to me that the testimony of all these eleven witnesses, or at least the most of them will not be necessary for the plaintiff. The witness Jackman, also, can only prove what the seven first witnesses, or any of them can establish. Then, as to the eight witnesses who are intimately acquainted with the circumstances of plaintiff's condition and circumstances when he left for California, and when he returned. It can not be, that they will all be necessary for that purpose; the seven first witnesses know, probably, the same facts; and if they do not, two of the eight will be amply sufficient to prove the facts sought to be established by that class of witnesses. The plaintiff, I am satisfied, will not have occasion to call on the trial one-half of the witnesses he has named.

On the other hand, I have looked at the affidavits of the defendants, and though as to some of their witnesses, the same remarks are applicable as to those of the plaintiff; yet I can not perceive why they (defendants) will not be obliged to call the greater part of the witnesses named by them. The plaintiff has attempted to explain some of the statements in defendants' affidavit, and objects that it is not deposed that the witnesses are acquainted with the facts, which they are expected to prove. I

think the criticism is *over nice.* The defendants show as well as the plaintiff, that Allen and Rentoul were present when the contract was made, and must know the facts concerning and connected with it. As to the other witnesses, the affidavit states their particular situation and the relations in which they severally stood, during the occurrence of the circumstances, and that they are material and necessary to *prove the particular facts to which they will be called.* How could they prove or testify to these facts, unless they possessed a knowledge of them, by being present at the time of their occurrence? or unless they were cognizant of them from their situation as agent, purser, officer or hands on board the ships of the defendants? It appears to me the affidavit is sufficient for the purpose intended.

The plaintiff has attempted to get rid of fifteen of the defendants' witnesses by swearing that he has stated to his counsel the facts to which he *believes* each of them can testify, and that his counsel has advised him that their testimony can not be material or necessary for the defendants on the trial, and that he so believes. He undoubtedly swears to such belief in good faith; but it is not to be supposed that he can know all the facts which the defendants expect to prove, or that will be proved by their witnesses. They have probably not disclosed to him their testimony. It is sufficient that they have done so to their own counsel, and that he has advised them as to its necessity. The defendants could, probably, make a similar affidavit as to many of the plaintiff's witnesses, and make it in as good faith, as the plaintiff has sworn to his statement, and yet the court would not undertake to say these witnesses would not be material to the plaintiff. Each party knows better than his adversary what facts he can prove, or expects to prove by his several witnesses, and the court places reliance accordingly on the affidavits made by each.

On the whole, without going into a further examination, I am satisfied, as before remarked, that the place of trial should be changed. The convenience of most of the witnesses will be best consulted by the change, which, with the fact that the cause of action originated in New York, seems to render the granting of the motion almost imperative 4 *How. Pr. R.* 84; 6 *id.* 6; 4 *Hill,* 68, 536; *Rule* 45; 3 *How. Pr. R.* 71). It was said that the

change of the place of trial to the city of New York would prove ruinous to the plaintiff, as he would be subject to the great delay and expense inseparable from trials in that city.   This, no doubt, would prove a serious evil, though one which the court could not probably take into consideration.   But as the defendants offered to stipulate that the place of trial might be changed to some one of the adjacent counties, an order must be entered changing the place of trial from the county of St. Lawrence to the city and county of New York, *unless* the plaintiff shall elect by notice in writing, to be served on defendants' attorney in twenty days after service of notice of this order, to try the action in some one of the counties of Kings, Richmond, Westchester or Rockland; the costs of this motion to abide the event of the suit.